**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center, Suite 200
Mesa, Arizona 85201
(480) 464-1111
*Attorneys for Plaintiff*
By:  Adam B. Decker, No. 021461

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re  JAMES PAUL ABNER, fdba IRON MOUNTAIN ARCHITECTURAL, LLC, CHRISTINA DENISE ABNER, aka CHRISTINA GERCHAK, aka CHRISTINA GERCHAK-ABNER,<br><br>Debtor(s), | Petition No. 2:08-bk-05067-SSC<br><br>Chapter 7<br><br>Adversary No. 2:08-ap-00525-SSC |
| REHABILITATION FINANCE, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>JAMES PAUL ABNER, fdba IRON MOUNTAIN ARCHITECTURAL, LLC, CHRISTINA DENISE ABNER, aka CHRISTINA GERCHAK, aka CHRISTINA GERCHAK-ABNER,<br><br>Defendant(s). | **OBJECTION TO APPLICATION FOR ATTORNEYS' FEES AND COSTS** |

Plaintiff in the Adversary Proceeding, Rehabilitation Finance, L.L.C. ("Rehabilitation"), by and through its undersigned counsel, hereby objects to Defendant James Paul Abner's Application for Attorney's Fees and Costs. The Court must not award Defendant

Page 1

Abner any of his incurred fees and costs. The reasons that the Court should deny Defendant's Application are as follows:

    1. Attorney's fees are generally not available in adversary proceedings pursuant to Federal Rules of Bankruptcy Procedure, Rule 7054;

    2. The debt at issue in this adversary proceeding was not a "consumer debt" as required by 11 U.S.C. § 523(d);

    3. The contract at issue in this adversary proceeding does not permit for an award of fees or costs to Defendant Abner;

    4. The amount of the fees sought by Defendant Abner is unreasonable in light of the work actually performed to defend the litigation; and,

    5. Rehabilitation was substantially justified in bringing its claim, and circumstances exist that would make the award of fees to Abner unjust.

For the foregoing reasons, and as addressed further below, this Court should deny Defendant Abner's Application for Attorney's Fees and Costs. These reasons are detailed further in the following Memorandum of Points and Authorities, along with the entire record before the Court, both of which are incorporated herein by this reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

The basis of the Complaint in this litigation is to except a debt from discharge stemming from a loan between Plaintiff Rehabilitation and Defendant Abner pursuant to 11 U.S.C. § 523(a)(2) and (6). After a trial on the merits, this Court found that "based upon the totality of circumstances, the Defendant's actions do not rise to the level of fraud contemplated in § 523(a)(2) and (6)," thereby concluding that the Rehabilitation debt was dischargeable. S*ee, Memorandum Decision ("Decision")*, p. 8, ll. 7-9. Defendant Abner has since applied for an award of attorneys' fees citing no legal authority to support that request, leaving Plaintiff Rehabilitation to guess under what basis Abner believes he is entitled to such an award.[1] Plaintiff Rehabilitation submits that Abner failed to cite to any legal authority that

---

[1] The only basis cited by Abner is that both Plaintiff Rehabilitation and Abner had requested a reimbursement of fees in their initial pleadings. *See,* Application for Fees, p. 1, ll. 27.

would support his request for reimbursement because that authority does not exist.

I. **ARGUMENT**

A. *Attorney's fees are generally not available in adversary proceedings pursuant to Federal Rules of Bankruptcy Procedure 7054.*

A decision to award costs is within the sound discretion of the Bankruptcy Court under F.R.B.P. 7054. However, attorney's fees are generally not available under Rule 7054, and they are reserved for exceptional circumstances. *In re Roco Corp.*, 37 B.R. 770, 775 (Bankr. R.I. 1984). A Court may not shift fees from the prevailing party to the losing party under the guise of awarding sanctions. *In re Nichols*, 40 CBC.2d 65, 221 B.R. 275, 280 (Bankr.N.D.Okla. 1998). Moreover, it has also been held that where both parties have pursued their claims in good faith, it is not an abuse of discretion for the trial court to decide not to award any fees or costs. *In re Homeowners Mortgage and Equity, Inc.*, 354 F.3d 372, 377 (5th Cir. 2003).

In the case at hand, while the Court determined that Plaintiff Rehabilitation had not met its burden of proof, the Court did not find that Rehabilitation had pursued its claims in bad faith. In fact, the Court's Memorandum Decision (hereinafter "*Decision*") supports the assertion that Plaintiff had a basis for its claims.

For example, this Court determined that "Mr. Abner testified that he did not meet Mr. Lundstrom until November 2005 concerning the Cloud and New River properties. However, the evidence is inconsistent with Mr. Abner's recollection of what transpired." *See, Decision*, p. 4, ll. 18-20, p. 5, l. 1. Here, the Court determined that Defendant Abner's testimony was inconsistent and that the facts offered by Rehabilitation as to an initial meeting were more credible.

As another example of the Court's concurrence with the facts presented by Plaintiff Rehabilitation as opposed to those offered by Abner, the Court concluded that:

> [B]ased upon this record, Messrs. Abner and Herrera executed a promissory note before a notary public on September 7, 2005. Mr. Abner executed the promissory note, so that he could obtain funding from the plaintiff to assist in the development of several parcels of real property. *Mr. Abner has provided no other explanation*

Page 3

> *as to why he executed said note in favor of the plaintiff.* Therefore, although Mr. Abner has no recollection of meeting with Mr. Lundstrom prior to November 2005, *it is clear that Mr. Abner was aware that he was obtaining financing from the plaintiff to pursue the development of the New River and Cloud properties which were clearly described in the promissory note that he executed.* Moreover, although Mr. Abner has a recollection that, in November 2005, he met with Mr. Lundstrom to discuss the fact that Mr. Goldman had been involved in fraudulent conduct, with Mr. Goldman misrepresenting to the parties that he was a mortgage loan officer and a lawyer to obtain funds from innocent third parties, it is possible that this was a follow up meeting that Mr. Abner had with one or more principles of the plaintiff. *The Court concludes that Mr. Abner clearly knew that he was obtaining financing from the plaintiff in the amount of $120,000.00 in September 2005.*

*See, Decision*, p. 5, ll. 10-20, p. 6, ll. 1-4 (emphasis added). The findings of the Court as to this paragraph demonstrate that despite the assertions of Mr. Abner, the Court found that the facts and evidence presented by the Plaintiff Rehabilitation were more credible than the arguments raised by Defendant Abner. This occurrence is evidence in at least one more occasion in the *Decision*.

> Mr. Abner also testified that he was really a teacher at the time of the loan transaction, and was not really involved in the real estate business. *However, the exhibits support Mr. Lundstrom's testimony that Mr. Abner was involved in the real estate business since September 2005.* Moreover, as noted previously, *Mr. Abner offered no other plausible explanation as to why he executed a promissory note in September 2005 in favor of the plaintiff.*

*See, Decision*, p. 6, ll. 5-10 (emphasis added).

Despite these findings of fact outlined by the Court which meshed with the case presented by Plaintiff Rehabilitation, in the end, the Court found that "based on the totality of the circumstances, the defendant's actions do not rise to the level of fraud contemplated by § 523, (a)(2) and (6)." Based upon the above sections of the *Decision*, Plaintiff Rehabilitation is left to conclude that the Court found the evidence presented by Rehabilitation was more credible than the evidence presented by Defendant Abner for his defense; however, notwithstanding the credibility victory, under a totality of circumstances, Plaintiff failed to carry its burden of proof. Considering the foregoing, there is no evidence that would support a

Page 4

basis to penalize Rehabilitation by awarding Abner his attorney's fees and costs. Rehabilitation pursued its claims in good faith and Abner should not receive an award of fees.

### B. *The debt at issue to this adversary proceeding was not "consumer debt" as required by 11 U.S.C. § 523(d).*

Under the Bankruptcy Code 11 U.S.C. § 523(d), an award of costs and attorney's fees to the debtor shall be granted when the court finds that the position of the creditor in claiming that a "consumer debt" was nondischargeable due to it having been obtained under false pretenses, a false representation, or actual fraud was <u>not substantially justified</u>. As outlined in the preceding section, Plaintiff asserts that its pursuit of its claim was substantially justified as supported by the findings of fact of the *Decision*.

Moreover, a key component of an award of fees under § 523(d) for a debtor defending a claim under § 523(a)(2) is whether the debt was a "consumer debt." When a debt is a business debt as opposed to a consumer debt, a debtor will fail to prove the threshold elements to recover fees under § 523(d). *See, American Exp. Travel v. Baker*, 213 B.R. 834 (Bankr. N.D.Ill. 1997). Consumer debt is defined by statute as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). In other words, the provision for recovery of costs and attorney's fees under §523(d) is *not* applicable when the debt in question is *not* a "consumer debt." For example, where the debt is one for building supplies obtained by a self-employed contractor, or where the debt arises from a loan obtained to get money to invest in the stock market. *See, In re Pelen*, 33 B.R. 763 (Bankr.N.D.PA. 1983); *see also, In re Burns*, 894 F.2d 361 (10th Cir. 1990).

As this Court concluded in its *Decision*, "Mr. Abner executed the promissory note, so that he could obtain funding from the plaintiff to assist in the development of several parcels of real estate." *Decision,* p. 5, ll. 11-13. No straight-faced argument can be made by Defendant Abner that the debt was a "consumer debt" as opposed to a business debt. That being said, to the best of Plaintiff Rehabilitation's knowledge, there is not a provision in the Bankruptcy Code which would permit Defendant Abner from seeking the reimbursement of his fees and costs for the successful defense of the § 523(a)(2) claim. This is another reason

that Abner's Application for Attorney's Fees and Costs must be denied.

### C. *The promissory note executed by Abner does not provide for recovery of attorney's fees to Abner.*

The promissory note executed between Rehabilitation and Abner does not provide for attorney's fees for Abner in defense of the dischargeability of the note. *See*, Promissory Note attached hereto as **Exhibit A**. Paragraph 8 of the note provides that:

> The undersigned [Abner] agrees to pay all costs of collection when incurred, including, but not limited to reasonable attorney's fees. If any suit or action is instituted to enforce this note, the undersigned promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court adjudged as reasonable attorney's fees in such suit or action.

This provision provides for the reimbursement of fees to Rehabilitation, not to Abner. Further, in the event of default, with the filing of bankruptcy being a default (see Paragraph 13 of the note), Abner is also required to pay Rehab its fees and costs, and not the other way around. "In the event of default which requires the holder to take an action or actions to protect its interests herein, the undersigned agrees to pay all costs incurred therein, including reasonable attorney's fees and costs." Nothing in the promissory note provides for the reimbursement of fees and costs for Abner in the event that Abner successfully defends the dischargeability of the debt.

### D. *The amount of the fees sought by Defendant Abner is unreasonable in light of the work actually performed to defend this litigation.*

Defendant Abner is seeking the reimbursement of $15,802.50 for the defense of this adversary proceeding. This amount is exorbitant, unreasonable, and must be heavily scrutinized in light of the actual attorney work performed by Defendant's counsel.

The following are the pleadings filed by Defendant Abner: (1) a short four-page general denial answer; (2) a two-page motion to reset scheduling conference was filed due to a conflict with Defendant's counsel's schedule; and, (3) the joint pretrial statement, which a

Page 6

review of the statement demonstrates that the input offered by Abner for his position in that statement was minimal in light of the content provided by Plaintiff.

Defendant Abner never provided a disclosure statement to Plaintiff. In fact, Defendant Abner's discovery was non-existent; Defendant Abner did not participate in any discovery. Defendant Abner presented one witness, himself, at the trial. Moreover, Defendant Abner utilized only five exhibits as evidence in the defense of his case.

How can the filing and preparation of three short pleadings, the decision not to participate in any discovery, the preparation and use of one witness for trial, and the utilization of five exhibits at trial equate to attorney's fees in the amount of $15,802.50? A review of the itemized invoices offered in Abner's Application fails to specifically identify the work performed, and instead is an example of improper block billing. *See, In re Haun*, 396 B.R. 522, 533 (Bankr.D.Id. 2008) ("Listing only the total charge for lumped services deprives the Court of the ability to weigh the reasonableness of either the amount of time spent or the amount charged for the individual services."). It has been noted that lumping or block billing is a "universally discouraged" practice that justifies a court's reduction or elimination of compensation. *Id.* All of the invoice entries should be scrutinized; however, Rehabilitation points the Court to the following questionable entries:

| Date | Time | Scrutiny |
|---|---|---|
| 8/11/08 | 2.8 | This entry fails to identify specific issues of research and what specific damages are being reviewed. |
| 8/27/08 | 3.4 | This entry fails to identify what "staffing" means, and the 3.4 hours seems excessive for a conference with a client. |
| 9/10/08 | 2.4 | For this entry, 2.4 hours seems excessive for a short general denial Answer which was filed. Moreover, there is no description as to what "staffing" means. |
| 11/13/08 | 1.0 | This entry should be scrutinized because Defendant Abner did not participate in any discovery whatsoever. |
| 11/13/08 | 1.2 | Again, this entry fails to identify what "staffing" means. Moreover, no discovery requests were ever made, so no reimbursement should be provided. |
| 11/14/08 | .75 | This entry fails because no Request for Production of |

| | | | |
|---|---|---|---|
| | | | Documents was ever sent or made to Plaintiff Rehabilitation. |
| | 12/07/08 | .8 | This entry is questioned because only five exhibits were utilized, and financial documents reviewed by Abner's counsel were never disclosed. |
| | 2/06/09 | 1.4 | This entry is questioned because the review of documents by Abner should not be a charged fee. Moreover, no documents were disclosed, so the documents reviewed by Abner are unknown. |
| | 2/19/09 | 2.9 | This entry is questioned because there were very few Court documents ever filed in this case, and an analysis of case issues on dischargeability had already been conducted in early entries. |
| | 3/10/09 | 1.5 | Again, for this entry, whatever exhibits were reviewed, they were minimal, along with the single witness, and the relatively straightforward issues. |
| | 4/16/09 | 2.6 | The review of Barbara Royer's deposition, which was submitted to the Court as an exhibit, and which was a short and to the point deposition, should not have taken 2.6 hours to review. |
| | 4/22/09 | 3.2 | The review of Abner's deposition, again which was straight-forward and relatively short, along with further review of only five exhibits which were submitted at trial, should not have taken 3.2 hours. |
| | 4/28/09 | 2.8 | For this entry, 2.8 hours is too long for a relatively short status conference and phone conversation between counsel. That is all that took place that day. |
| | 5/07/09 | 2.2 | This entry fails to identify with whom a conference and interview took place. Moreover, the term "review" is not qualified. Again, only one witness was utilized by the Defendants. |
| | 5/13/09 | 2.2 | This entry should be scrutinized because, just a few weeks earlier, Defendant has expended 2.6 hours to review Barbara Royer's deposition, and 3.2 to review Defendant Abner's deposition. |
| | 10/08/09 | 1.5 | This entry should be scrutinized because any research relied upon by Defendant Abner in applying for his fees was not referenced or cited in his application, and is doubtful in light of the arguments above, that any research even took place. |
| | / / / | | |
| | / / / | | |

Page 8

### E. Rehabilitation was substantially justified in bringing its claim, and circumstances do exist that would make the award of fees to Abner unjust.

In the event that this Court is not convinced by the arguments raised above by Plaintiff Rehabilitation as to why an award of fees should not be granted, then Rehabilitation submits these final arguments. § 523(d) includes a two part test after the debt is determined to be "consumer" debt. The first is to determine whether the creditor was substantially justified in its position. Rehabilitation incorporates by this reference the analysis of credibility of witnesses raised in this Objection, Section I.A. to support the notion that it was justified in bringing this action. Again, the case was determined on a "totality of circumstances" and the scale fell to the favor of Defendant Abner. Nothing from the *Decision* suggests that this Court determined that Rehabilitation was not justified in its claim.

The second step is that an award of fees will not be allowed if it is unjust under the circumstances. *See*, § 523(d). This includes an analysis of a creditor who is less able to pay the fees than the debtor. *See, In re Sidore,* 41 B.R. 206 (Bankr. W.D.N.Y. 1984). Such is the case at hand. Rehabilitation's liabilities are far greater than its assets. As outlined in the attached declaration of Burke Files at **Exhibit B**.

## II. CONCLUSION.

WHEREFORE, for the foregoing reasons, Plaintiff Rehabilitation respectfully requests that this Court not award Defendant Abner an award of attorneys' fees and therefore deny Abner's Application.

Moreover, Plaintiff Rehabilitation requests a reimbursement of its fees for having to prepare this Objection to an Application that was filed without any basis, legal authority, or argument.

/ / /

/ / /

/ / /

Rehabilitation should not have to pay for the preparation of an Objection to an Application that never should have been filed because it was baseless.

RESPECTFULLY SUBMITTED this 30th day of October, 2009.

**JACKSON WHITE, P.C.**

/s/ Adam B. Decker
Adam B. Decker
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this *Objection To Application For Attorneys' Fees And Costs* was mailed this 30th day of October, 2009 to all interested parties shown below.

Anthony H. Mason
U.S. Bankruptcy Trustee
P. O. Box 4427
Phoenix, Arizona 85030-4427

U.S. Trustee
Office of the U.S. Trustee
230 N. First Avenue
Suite 204
Phoenix, Arizona 85003

Joseph W. Charles, Esq.
5704 W. Palmaire Avenue
P. O. Box 1737
Glendale, Arizona 85311-1737
*Attorney for Debtors*

/s/ P. Brimhall

*21860-002\\F:\\PQR\\Rehabilitation Finance\\v. Herrera\\ABNER BK\\Pldg\\Objection to App for Atty Fees 102809.doc*

# Exhibit A

LOAN NO.: _____

## NON-OWNER OCCUPIED INTEREST ONLY NOTE SECURED BY DEED OF TRUST

Note   $120,000.00                                                                        Document Date:   September 7, 2005

For the value received, the undersigned (the "maker") promises to pay to the order of Rehabilitation Finance LLC (the "holder"), the sum of
One hundred twenty thousand dollars ($120,000.00), including interest at the rate of 0% percent per annum commencing September 7, 2005.

Interest of as described herein will be due and payable December 6, 2005 when the entire amount of unpaid principal, consulting fees and any other ancillary expenses, which remain unpaid along with any accrued but unpaid interest currently due and payable. The payments will be first applied to the interest then principal. To the extent that the holder is required to pay any costs or make any advances to protect its interest herein or any late charges are incurred hereunder, maker agrees to immediately repay the same to the holder in addition to the regular monthly payment. This will be due immediately within five days upon receiving written notice from the holder and failure to do so will be deemed a default hereunder. The Holder will receive Ten percent (10%) of the profit earned by the Maker / Payee from the sale of the subject property and any other parcels derived from the subject property from any type of split or subdivision of real estate allowed by Maricopa and / or the State of Arizona.

1. If the undersigned should fail to make payments of principal and / or interest or any other payment due and owed within 5 days of the Due Date, the outstanding principal and all accrued but unpaid interest shall bear interest without notice, at a rate of 30% per annum retroactive to the commencement of this Note. At the discretion of the Holder, upon satisfaction of any delinquency the effective interest date shall be reinstated to the original note rate.

2. PREPAYMENT PENALTY: This Note may be prepaid in whole or part at any time without penalty to the, but a prepayment shall be subject to prepayment penalty as set forth in the attached Addendum to this Note.

3. LATE CHARGE: If the undersigned shall fail to make any monthly payment of interest or principal within five days of its due date, a late charge by the way of damages in the amount of 15% of the payment due, or $50.00, which ever is greater, shall be immediately due and payable.

Unofficial Document

4. Maker shall not remit a late payment without the inclusion of the late charge.

5. The undersigned agrees that the holder of this Note may, without notice to the undersigned and without affecting the liability of the undersigned, accept additional or substitute security for this Note, or release any security or any party liable for this Note, or extend or renew this Note.

6. If the undersigned consists of more than one person or entity, their obligation under this Note will be joint and several.

7. All amounts payable under this Note are payable in lawful money of the United States. Checks will constitute payment only when collected.

8. The undersigned agrees to pay all costs of collection when incurred, including, but not limited to reasonable attorney's fees. If any suit or action is instituted to enforce this Note, the undersigned promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court adjudge as reasonable attorney's fees in such suit or action.

9. This Note is secured by a Deed of Trust and Assignment of Rents of even date herewith, covering real property (the "subject property") located at (i) 3540 West New River Road, New River Maricopa AZ 85084-8244 / Lot 14/W2 SE4 NE4 SE4EX S 50F RD (Maricopa County, Arizona) (i) 1034 East Cloud Phoenix AZ 85051. The Deed of Trust contains provisions for the acceleration of the maturity of the Note. Upon completion of a subdivision of the subject property (i) the holders interest will automatically incorporate the new parcels created by the subdivision referenced herein. At the discretion of the Holder the lien placed on the subject property (ii) may be released.

10. Maker shall not sell, transfer, or assign any right, title or interest in the subject property without the prior written approval of the Holder hereof.

11. Maker will pay to the Holder hereof a service charge of $75.00 for any NSF check given in payment hereunder.

12. Trustor shall pay all reconveyance fees.

13. Each of the following shall constitute a default hereunder: failure by maker to timely pay in full any payment due hereunder; failure of maker to observe or perform any term, provision or duty under this Note or the Deed of Trust; death of the maker, or of any endorser, guarantor or other person who is or may become liable for the payment hereof; an assignment for the benefit of maker's creditors, or the filing of a voluntary or involuntary petition in bankruptcy for or by the maker; any material adverse change in maker's financial condition; and if any statement by the maker in any credit application, including financial statement, shall be or prove to have been false when made or furnished.

14. In the event of default which requires the Holder to take any action or actions to protect its interest herein, the undersigned agree(s) to pay all costs incurred therein, including reasonable attorney's fees and costs.

15. Any delay in exercising, or failure to exercise, any right, remedy or option under this Note by the Holder hereof shall not constitute a waiver or release of the right to exercise such right, remedy or option at any subsequent time.

16. This Note is governed by Arizona law.

17. The Maker agrees to retain the Holder and / or any employee, associate or other person designated by the Holder for the purpose of completing the required tasks necessary to successfully expedite the subdivision of the subject

property (i) referenced herein paragraph 9. All costs and expenses will be invoiced to the Maker at the end of each month and will be due and payable within 15 days from the date of the invoice. Payment of these service invoices will constitute default under the same criteria as the failure to pay interest or any other sums due the Holder.

**AGREED AND ACCEPTED**

| _signature_ 9/7/05 | _signature_ 9-7-05 |
|---|---|
| James P. Abner (corporately)    DATE | Robert Herrera (corporately)    DATE |
| _signature_ | _signature_ |
| JAMES P. ABNER (individually)    BORROWER | ROBERT HERRERA (individually)    BORROWER |
| 9/7/05 | 9-7-05 |
| DATE | DATE |

State of Arizona
County of Maricopa
This instrument was acknowledged before me
On this 7 day of September, 20 05

_signature: Barbara Royer_
**NOTARY**

OFFICIAL SEAL
BARBARA ROYER
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Jan. 4, 2009

State of Arizona
County of Maricopa
This instrument was acknowledged before me
On this 7 day of September, 20 05

_signature: Barbara Royer_
**NOTARY**

OFFICIAL SEAL
BARBARA ROYER
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Jan. 4, 2009

# Exhibit B

# JACKSONWHITE
## ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center, Suite 200
Mesa, Arizona 85201
(480) 464-1111
*Attorneys for Plaintiff*
By:   Adam B. Decker, No. 021461

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re JAMES PAUL ABNER, fdba IRON MOUNTAIN ARCHITECTURAL, LLC, CHRISTINA DENISE ABNER, aka CHRISTINA GERCHAK, aka CHRISTINA GERCHAK-ABNER,<br><br>Debtor(s),<br><br>REHABILITATION FINANCE, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>JAMES PAUL ABNER, fdba IRON MOUNTAIN ARCHITECTURAL, LLC, CHRISTINA DENISE ABNER, aka CHRISTINA GERCHAK, aka CHRISTINA GERCHAK-ABNER,<br><br>Defendant(s). | Petition No. 2:08-bk-05067-SSC<br><br>Chapter 7<br><br>Adversary No. 2:08-ap-00525-SSC<br><br>**DECLARATION OF L. BURKE FILES** |

I, L. Burke Files, declare under a penalty of perjury that:

1.   I make this declaration based upon my own knowledge of the facts contained herein.

Page 1

2. I am the managing member and principal of Rehabilitation Finance, LLC, the Plaintiff in the adversary proceeding no. 2:08-AP-00525-SSC, *Rehabilitation Finance, LLC v. James Paul Abner, et. al.*

3. Like to many other real estate companies in the State of Arizona, Rehabilitation Finance is no longer operating.

4. The liabilities of Rehabilitation far outweigh any assets of the company, which assets are limited to a default judgment against Robert Herrera, the former partner of James P. Abner, whose whereabouts are unknown to Plaintiff Rehabilitation, and who, to the best of Rehabilitations knowledge, has no assets himself to pay on the Default Judgment.

5. Furthermore, because of Rehabilitation's current liabilities, Rehabilitation is struggling to pay the attorneys' fees it owes stemming from this proceeding.

6. Rehabilitation is not in a position, and will likely never be in a position, to pay any attorneys' fee award to Defendant Abner.

7. I verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED this 30th day of October, 2009.

_____
L. Burke Files

*21860-002\\F:\\PQR\\Rehabilitation Finance\\v. Herrera\\ABNER BK\\Pldg\\Files Declaration 103009.doc*